Atlas MF Mezzanine Borrower LLC v Macquarie Texas Loan Holder LLC (2021 NY Slip Op 06070)





Atlas MF Mezzanine Borrower LLC v Macquarie Texas Loan Holder LLC


2021 NY Slip Op 06070


Decided on November 09, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 09, 2021

Before: Renwick, J.P., Singh, Kennedy, Rodriguez, Pitt, JJ. 


Index No. 651657/17 Appeal No. 14595 Case No. 2020-02327 

[*1]Atlas MF Mezzanine Borrower LLC, Plaintiff-Appellant,
v
Macquarie Texas Loan Holder LLC, Defendant-Respondent, KKR Repa AIV-2, L.P., et al., Defendants.


Meister Seelig & Fein LLP, New York (Stephen B. Meister of counsel), for appellant.
Dechert LLP, New York (Gary J. Mennitt of counsel), for respondent.



Order, Supreme Court, New York County (Joel M. Cohen, J.), entered on or about March 30, 2020, which, insofar as appealed from as limited by the briefs, dismissed Count 2 of the First Amended Complaint after trial, unanimously affirmed, with costs.
Even if the trial court erred in placing the burden of proof of commercial unreasonableness on plaintiff debtor, Count 2 of the First Amended Complaint was nonetheless properly dismissed because defendant secured party met its burden of demonstrating that the auction process was commercially reasonable.
The time between default and auction — just under two months — was not insufficient as a matter of law, and plaintiff's expert did not opine otherwise. The marketing, which included an email blast to 8,400 potential investors, creation of an online data room, and advertisements in Real Estate Alert and the Wall Street Journal, exceeded the requirements the parties had agreed to, and there has been no showing that those requirements were "manifestly unreasonable" (see UCC § 9-603[a]; Leonia Bank v Kouri, 286 AD2d 654, 655 [1st Dept 2001]). Those efforts succeeded in attracting 63 potential bidders to the online data room (see First Natl. Bank of Glens Falls v G.F. Clear, Inc., 93 AD2d 925, 926 [3d Dept 1983]) and two third-party bidders to the auction itself — although only one of these ultimately bid (see Sumner v Extebank, 88 AD2d 887, 888 [1st Dept 1982], mod on other grounds by 58 NY2d 1087 [1983]). Plaintiff's expert's opinion that 12 days was an insufficient marketing period disregarded evidence of earlier marketing efforts.
There is no evidence that the requirements that the sale contract be executed and deposit paid at the auction were commercially unreasonable. The reasonableness of the reservation of rights to change terms, the 21-day payment deadline for cash buyers, and the 96-day deadline for U.S. Housing and Urban Development (HUD) approval was the subject of conflicting expert opinion and evidence. We find that the trial court did not improvidently exercise its discretion in crediting defendant's expert and evidence over plaintiff's.
Plaintiff's complaint that defendant attempted to block it from bidding at the auction is moot because defendant did ultimately allow it to bid. At any rate, defendant's conduct appears to have been appropriately calculated to ensure that plaintiff had the financial ability to close. It was also not commercially unreasonable for defendant to select a bidder that had a deposit check in-hand over one that did not. The sale terms specifically required that the "selected bidder" make a deposit by certified or bank check "[a]t" the auction. Although plaintiff argues that it was never actually "selected," it is undisputed that plaintiff would not have been able to present a check at that time even if it had been selected. The sale terms also expressly allowed defendant to accept a lower bid on more favorable terms or to add commercially reasonable conditions.
Plaintiff's [*2]complaint that the selected bidder did not have to sign the contract and place a deposit "[a]t" the auction, as required by the sale terms, is unfounded. That bidder did give defendant a deposit check at the auction, it was just not cashed. It also negotiated with defendant in good faith in an attempt to execute the contract right away, but the parties were unable to reach agreement until shortly thereafter. Defendant's decision to modify the contract, as a result of these negotiations, to provide extra time for HUD approval was consistent with the published bidding instructions, which advised that "Secured Party may elect to accept any comments to the contract of sale from the selected winner of the auction in its discretion."
The evidence does not support a finding that the price received for the properties at auction was "so inadequate as to shock the court's conscience" (see DeRosa v Chase Manhattan Mtge. Corp., 10 AD3d 317, 322 [1st Dept 2004]). Plaintiff's reliance on the resale price two years later is unavailing absent a showing that these were indicative of the value at the time of the auction.
Plaintiff's reliance on testimony and emails suggesting that defendant wanted to own the properties itself is also unavailing. Even if true, this does not mean that it conducted a commercially unreasonable sale process in order to do so.
We reject plaintiff's attempt to revive its previously dismissed good faith and fair dealing claim (see Atlas MF Mezzanine Borrower, LLC v Macquarie Tex. Loan Holder LLC, 174 AD3d 150, 158, 165-166 [1st Dept 2019]).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 9, 2021